IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
------------------------------------X
```
ERIK OOSTERWIJK & ASPASIA OOSTERWIJK        :

      **Plaintiffs**                                                   :

v.                                                                            : Civil Action No. 1:21-CV-1151-CCB

UNITED STATES OF AMERICA                         :

      **Defendant**                                                 :

```
------------------------------------X
```

**PLAINTIFFS' SURREPLY MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED**

When a taxpayer is charged a delinquency penalty under one IRC section (IRC § 6651) and disputes that penalty on a sole statutory basis for relief (*i.e.* "reasonable cause" and not "willful neglect") there is uniformity, the opposite of a "substantial variance." A taxpayer's dispute with the IRS - whether it is in the form of correspondence sent by letter or memorandum to the IRS Office of Appeals (*e.g. New Gaming Systems, Inv. v. U.S.*, 112 A.F.T.R.2d 2013-6664 (E.D.Cal. 2013(wherein the government claimed that a taxpayer's failure to take a position before the IRS's Office of Appeals was the basis for a "substantial variance"), or whether implied (*e.g. Hanna Iron Ore Co. v. U.S.*, 68 F. Supp 832, 836 (E.D.Mich. 1946)("[i]t is not necessary that a claimant submit all of his legal arguments in a claim for refund), or whether express - is incorporated into the lawsuit that is their "refund suit." A record of communication is created with the government, and the government is fully aware of the positions that a taxpayer has taken up to the point of filing suit.

1

There certainly is no prejudice to the government when the issues raised by a taxpayer throughout the administrative process becomes the basis for their lawsuit.

In this case, the Plaintiffs have been saying the same thing all along. The matter is simple; the positions a taxpayer takes before the IRS become part of the administrative Form 843 Claim for Refund and Request for Abatement that they file and become part of the lawsuit that the taxpayer files when their administrative refund claim is denied or deemed to be denied when it is not responded to within the statutory time frame. Now, the Defendant comes to this Court and instructs it to slice the administrative record into two records such that there are two statutes of limitations – one which begins running from an Appeals closing letter and one which begins running from disallowance of a Form 843 refund claim. There is no legal basis for the Defendant's position.

## I. PLAINTIFFS' REFUND CLAIM IS NOT TIME BARRED

Plaintiffs' administrative refund claim was based on their assertion that, for two different reasons, they had "reasonable cause" for the late filing of their 2017 income tax returns and for paying their taxes late. First, as expressly set forth in Plaintiffs Form 843 Claim for Refund and Request for Abatement (hereinafter, the "Form 843 Refund Claim") that they submitted to the IRS in July 2019, Plaintiffs claimed that they had "reasonable cause" for the late filing of their income tax return because they reasonably relied on their accountants to e-file their extension request in a timely fashion (*i.e.* on or before April 17, 2017). A copy of the Plaintiffs' Form 843 Refund Claim is attached hereto as ***Exhibit 1***. Second, Plaintiffs claimed that they had reasonable cause for not filing their income tax return until June 29, 2017 because, on April 30, 2017, they relied on their accountants' substantive advice that filing an extension request and paying their taxes would stop additional penalties from accruing. The Plaintiffs assert that the IRS was made aware of this latter

basis for their claim of "reasonable cause" by virtue of a Memorandum that Plaintiffs' accountants sent to the IRS Appeals Office on or about March 22, 2019. A copy of the March 22, 2019 Memorandum is attached hereto as *Exhibit 2*.[1]

Together, the Form 843 Refund Claim and the March 22, 2019 Memorandum comprised only one refund claim. The only refund claim made by Plaintiffs was the Form 843 Refund Claim that was submitted to the IRS in July 2019. The rationale as to "reasonable cause" set forth in the March 22, 2019 Memorandum was not a separate refund claim. The Form 843 Refund Claim subsumed and incorporated the "reasonable cause" set forth in the March 22, 2019 Memorandum, as well as any other bases for "reasonable cause" raised by Plaintiffs throughout the administrative process.

Defendant contends, however, that Plaintiffs made two different refund claims, the first on March 22, 2019 when their accountants sent the Memorandum to the IRS Appeals, and the second in July 2019 when they submitted their Form 843 Refund Claim. Defendant concedes that the Form 843 Refund Claim was made timely. Defendant contends, however, that the refund claim set forth in the March 22, 2019 Memorandum is time barred.

Defendant would have this Court treat the March 22, 2019 Memorandum as a separate and distinct refund claim. That Memorandum summarizes the discussion that took place during a meeting between Plaintiffs' accountants and two Appeals Officers, one of whom requested that the accountants submit a written document memorializing their conversation. The March 22, 2019 Memorandum was sent to the Appeals Officers and sets forth three grounds for relief from the penalty assessments. One of those points of appeal was that the Plaintiffs had relied on their

---

[1] *See* discussion of the March 22, 2019 Memorandum in Plaintiffs' Memorandum in Opposition, at pages 12-14 and in the Affidavit of David Goldner, CPA, CFP, CVA attached thereto as Exhibit 1.

3

accountants' substantive advice that they could stop additional penalties from accruing by submitting a new Form 4868 extension request and paying $1.8 million in estimated taxes. Plaintiffs were not advised to immediately file an estimated income tax return. When submitted to the IRS Appeals Office, the March 22, 2019 Memorandum was not intended to be a refund claim. Instead, the Memorandum was intended to present arguments on appeal supporting Plaintiffs' request for abatement of the assessed penalties. Nevertheless, by virtue of the IRS's receipt of this Memorandum, the IRS was fully aware that Plaintiffs believed that the assessed penalties should be abated because they had "reasonable cause" for not immediately filing their 2017 income tax return on April 30, 2018, the day when they learned that their extension request had not previously been e-filed. As a result of the March 22, 2019 Memorandum, the IRS was fully aware that the Plaintiffs believed that, because they had "reasonable cause" for not filing their income tax returns on April 30, 2019 as a result of their reliance on their accountants' substantive advice, late filing penalties should not have been assessed for the months of May and June of 2019. The IRS also was or should have been completely aware, as a result of the March 22, 2019 Memorandum, that once their appeal had concluded the Plaintiffs were requesting a refund of the late filing penalties that accrued in May and June 2019.

The Plaintiffs' appeal was denied, in part, by a letter issued on May 2, 2019, by Christine Williams, the Acting Appeals Team Manager of the IRS Appeals Office. That letter, which is attached to Defendant's Reply Memorandum as Exhibit C, titled "Re: Penalty Appeals," states that the IRS "recommends abating 50% and sustaining 50% of your penalties," and also states "that "your case is now closed in appeals." The letter instructed the Plaintiffs that if they do not agree with the IRS's recommendation they should:

4

- Pay the balance due on the assessed penalty;

- File a claim on Form 843, Claim for Refund and Request for Abatement, with the Service Center that processed the applicable return and include a statement requesting your claim be immediately disallowed;

- You'll receive a formal notice of claim disallowance;

- You have two years from the date of this formal claim disallowance to bring formal suit.

This letter closing Plaintiffs' appeal anticipates that if they filed a Form 843, Claim for Refund and Request for Abatement, they would receive "a formal notice of claim disallowance" and that they would have two years from "this formal claim disallowance to bring suit." This May 2, 2019 letter obviously was not the "formal notice of claim disallowance" referenced in the letter. Rather, it merely was a letter setting forth the IRS's decision on Plaintiff's appeal which instructed Plaintiffs of their options going forward..

Plaintiffs followed the IRS's advice and in July 2019 filed their formal refund claim by submitting the Form 843 Claim for Refund and Request for Abatement. In their Form 843 Refund Claim, the Plaintiffs alleged that they had "reasonable cause" for the untimely filing of their 2017 income tax return, but they did not expressly state that their "reasonable cause" was, at least in part, based on their reliance on their accountants' advice that paying their estimated taxes and filing for an extension would stop the accrual of penalties. The Form 843 Refund Claim expressly contended only that the Plaintiffs had "reasonable cause" for their late filing because they reasonably had relied on their accountants to e-file their extension request.

But, as a consequence of the March 22 2019 Memorandum, when the Plaintiffs' filed their Form 843 Refund Claim in July 2019 the IRS was fully on notice that the Plaintiffs believed that the

5

penalties should be abated and that their payment should be refunded for the additional reason that they had reasonably relied on the advice of their accountants that by paying their estimated taxes penalties would no longer accrue and, therefore, that they had "reasonable cause" for not immediately filing their 2017 income tax return on April 30, 2017. When Plaintiffs filed their Form 843 Refund Claim in July 2019, the March 22, 2019 Memorandum was part of the IRS's administrative record and was one of the bases for penalty abatement based on "reasonable cause" which was considered and rejected by the IRS Office of Appeals, thus triggering the refund claim. The Memorandum was readily available to the IRS agent who considered Plaintiffs' Form 843 Refund Claim, and either was or should have been considered in connection with the Form 843 Refund Claim.

The Defendant's contention that the March 22, 2019 Memorandum constitutes a refund claim that is separate and distinct from the Form 843 Refund Claim that Plaintiffs submitted in July 2019, while creative, is just plain wrong. There literally are hundreds of reported decisions finding that an informal refund claim was made by a taxpayer. Plaintiffs can not find even one case, not one, in which a court considers the informal claim to be a second, separate, stand alone refund claim. Defendant certainly cites to no such case. In all of the informal refund cases, there is deemed to be only one refund claim, and the informal claim is subsumed and incorporated in the more formal refund claim.[2] That is what happened in this case. The Form 843 Refund Claim made in July 2019

---

[2] *See, e.g., Cohen v. U.S., 578 F.3d 1, 25 (D.C. Cir. 2009)*("[A] taxpayer may use an informal claim, perfected by a subsequent formal claim, to meet the jurisdictional requirements of § 7422"); *U.S. v. Kale,* 314 U.S. 186, 194, 62 S.Ct. 214, 86 L.Ed. 132 (1941)("a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim, where formal defect and lack of specificity have been remedied by amendment filed after the lapse of the statutory period);

incorporated and subsumed the informal claim made in the March 22, 2019 Memorandum. The claim made in the Memorandum is not a second refund claim. There was only one refund claim, the claim submitted by Plaintiffs in July 2019 on Form 843.

Having asserted that the March 22, 2019 Memorandum is a separate refund claim, Defendant goes on to claim that the IRS's May 2, 2019 closing letter relating to the Plaintiffs' appeal is a "notice of disallowance" of Plaintiffs' refund claim which, pursuant to 26 U.S.C. 6532(a), triggered the running of the two-year statute of limitations. Pursuant to 26 U.S.C. § 6532(a), Plaintiffs had the right to file this lawsuit within "two years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of disallowance of the part of the claim to which the suit or proceeding relates." Defendant, however, confuses the IRS's May 2, 2019 letter relating to Plaintiffs' appeal with the "notice of disallowance" referenced in § 6532(a)(1). The "notice of disallowance" is a form letter, known as Letter 105C, and states:

> WE CAN'T ALLOW YOUR CLAIM We disallowed your claim for credit of the tax period listed at the top of this letter.

The notice of disallowance then goes on to set forth the reason(s) why the claim was disallowed. A copy of a sample Letter 105C is attached hereto as ***Exhibit 3***. *See also Internal Revenue Manual § 21.5.3.4.6.1 (04-15-2021)(*"Letter 105C, Claim Disallowed, is used for fully disavowed claim,"

---

*Schinazi v. U.S.*, 2002 U.S. Dist. LEXIS 10794 (N.D. Ga. 2002)(same); *Greene-Thapedi v. U.S.*, 549 F.3d, 530, 533 (7th Cir. 2008)("Because [the plaintiff] failed to perfect her administrative claim for a refund ..., the district court lacked subject matter jurisdiction"); *PALA, Inc. Employees Profit Sharing Plan & Trust Agreement v. U.S.*, 234 F. 3d 873 879 (5th Cir. 2000)("[c]ourts will excuse 'harmless noncompliance' with the formalities prescribed for refund claims," provided that the taxpayer corrects the formal deficiencies at a later time); *Kaffenberger v. U.S.*, 314 F.3d 944, 954 (8th Cir. 2003)("the Supreme Court has endorsed informal claims filed within the statutory period that have technical deficiencies, as long as a valid refund claim is subsequently made").

7

and "Letter 106C, Claim Partially Disallowed, is used for partially disallowed claims"); *Chief Counsel Advice 201921013* ("informal claim for refund not disallowed by Letter 105C was a timely informal claim"); *Dixon v. IRS*, 2019 U.S. Dist. LEXIS 124113, 122 A.F.T.R.2d (RIA) 2019-5300 (N.D.Ind. 2019)("disallowance letter," Letter 105C, triggered running of 26 U.S. C. 6532(a)(1) statute of limitations).[3]

In short, the two-year limit on Plaintiff's period for bringing this law suit in district court did not start to run until two years after the IRS issued a Letter 105C "notice of disallowance" of the Form 843 Refund Claim. In fact, however, the IRS never did issue a Letter 105C "notice of disallowance" of the Plaintiffs' refund claim. The rule is that when the IRS fails to issue a "notice of disallowance" then the limitations period stays open indefinitely. Federal Tax Coordinator 2d, ¶T-9018; Service Center Advice 200202069. Thus, because the IRS never issued a "notice of disallowance," the Plaintiffs had no limitations deadline for filing this lawsuit. This lawsuit was filed on May 11, 2021. The basis for "reasonable cause" set forth in the March 22, 2019 Memorandum was never disallowed and is not time barred.

### III. ALL OF DEFENDANT'S OTHER ARGUMENT IN SUPPORT OF ITS CONTENTION THAT THERE IS A SUBSTANTIAL VARIANCE ARE WITHOUT MERIT

---

[3]Moreover, a "notice of allowance" must be sent by certified or registered mail. *See Pennoni v. U.S.*, 86 Fed. Cl. 351, 365 n.16 (Fed. Cl. 2009)(letter not sent by certified or registered mail does not constitute a "notice of disallowance" for purposes of running the statute of limitations under § 6532(a)); *Thomas v. U.S.*, 166 F.3d 825, 830 (6th Cir. 1999)(finding that an IRS letter informing the taxpayer of a rejected claim not sent by certified or registered mail "could not start the limitations period" under § 6532(a)(1)). The form Letter 105C that is attached hereto as Exhibit 3 states, in capital letters, that it was sent by "CERTIFIED MAIL" and is a "notice of disallowance." In contrast, there is no indication that the Appeals closing letter, which Defendant attached as Exhibit C to its Reply Memorandum and contends is a "notice of disallowance," was sent by certified or registered mail. For that reason alone, it is not a "notice of disallowance" and can not possibly have started the running of the limitations period.

Defendant makes three additional arguments urging the Court to ignore Plaintiffs' claim that the "reasonable cause" set forth in the March 22, 2019 Memorandum constitutes an informal refund claim. First, Defendant argues that the "refund claim" made in the March 22, 2019 Memorandum is not a refund claim at all, but only is a claim for abatement of assessed penalties, because (a) the Memorandum does not expressly request that the taxpayer is seeking a refund but only that they want the penalties abated, and (b) because the Plaintiffs had not paid the penalties as of March 22, 2019 when they submitted their Memorandum to the IRS Appeals Office. The Defendant's contention is nonsense. A request for abatement is the same thing as a request for a refund; Form 843 is entitled "Claim for Refund ***and Request for Abatement***." (Emphasis added). Additionally, while it is true that Plaintiffs had not paid the delinquency penalties in full as of March 22, 2019, their administrative Form 843 Refund Claim was not submitted in March 2019 but was submitted in July 2019. By then, Plaintiffs had paid all of the penalties assessed against them.

In the first place, there is no requirement that a taxpayer must have paid the assessed penalties in full prior to making an informal refund claim. *See, e.g., Crenshaw v. Hrcka*, 237 F.2d 372 (4th Cir. 1956)(letter written by taxpayer's attorney to Treasury affirming plan to pay deficiency in installments, which stated intention to file claim for refund as soon as the entire amount of the deficiency was paid, constituted a valid informal refund claim); *Import Wholesalers Corp. v. U.S.*, 368 F.2d 577, 277 Ct. Cl. 493 (1966)(Claim for abatement of excise tax assessments filed at time when Treasury was holding property seized under levy for taxes was sufficient to constitute claim for refund of amount later realized by Treasury on subsequent sale of property). More to the point, there is no question but that the March 22, 2019 Memorandum put the IRS on notice to conduct an administrative review specifically directed to the Plaintiff's Form 843 Refund Claim based on the

grounds asserted in the March 22, 2019 Memorandum, and there is no question but that Plaintiffs had paid in full the penalties assessed against them when they filed their Form 843 Refund Claim in July 2019.

Nor is their any merit to Defendant's contention that Plaintiffs' refund claim is barred by sovereign immunity. As Defendant acknowledges, the United States has conditionally waived sovereign immunity for tax refund suits where the taxpayer complies with the statutory requirements in 26 U.S.C. § 6532, 26 U.S.C. §7422, and 28 U.S.C. § 1346. *U.S. v. Forma*, 43 F.3d 759, 763 (2d Cir. 1994)("Congress has broadly waived sovereign immunity with respect to federal income tax refund actions ... 26 U.S.C. § 7422(a) provides that a taxpayer must have filed a 'claim for refund or credit' with the IRS to maintain a refund suit"); *U.S. v. Engels*, 2001 U.S. Dist. LEXIS 10511 (N.D. Iowa 2001)("the Supreme Court has interpreted 28 U.S.C. 1346(a)(1) as requiring full payment of the tax before a refund suit can be maintained in a federal district court"). *See also* 26 U.S.C. 6532, requiring that a lawsuit seeking a refund cannot be filed within six months of the date of filing an administrative refund claim, or after two years of a notice of disallowance of a taxpayer's administrative refund claim.

In the first place, it is highly doubtful whether the concept of sovereign immunity applies to the making of informal refund claims. *See, e.g., Mobil Corp. v. U.S.* 67 Fed.Cl. 708, 723 n.17, (Fed Cl. 2005)(where the government contended that there must be an express waiver of sovereign immunity for a valid informal claim, the court held that the government's position was erroneous insofar as courts do not construe informal claims as requiring an express waiver of sovereign immunity), citing *American Radiator v. U.S.*, 162 Ct. Cl. 106, 113-114, 318 F.2d 915, 920 (Cr. Cl. 1963); *BNSF Ry. Co. v. U.S.*, 75 F.3d 745, 757 (5th Cir. 2015)(informal claim deemed to be a refund

claim and is within the limited waiver of sovereign immunity set forth in 26 U.S.C. § 7422). More to the point, Plaintiffs' lawsuit fully complies with the requirements of §§ 7322, 6531 and 1346. This lawsuit was preceded by an administrative claim for refund, all penalties had been paid in full, and the lawsuit was filed within the requisite time period.

Lastly, Defendant's contention that the March 22, 2019 Memorandum is not a valid informal claim because it was sent to the Office of Appeals is ludicrous. Not one of the hundreds of cases finding that a taxpayer had lodged an informal refund claim considered the identity of the specific person to whom the informal claim had been submitted as relevant, except that "[t]he evidence relied upon to establish the informal claim must be in the possession of an authorized agent of the Commissioner in order to satisfy the element of notice." *Mobil Corp. v. U.S.*, 67 Fed. Cl. 708, 716 (Fed. Cl. 2005), Here, the March 22, 2019 Memorandum was sent to IRS Appeals Officers because, obviously, that is whom the taxpayers were communicating with at the time that they submitted the Memorandum. The cases discussing informal claims involve refund or abatement claims that are made to a host of different sorts of IRS employees and agents. What matters is that the informal claim is in writing and is part of the IRS's administrative record so that it can be considered in connection with the taxpayer's administrative refund claim. The case law makes it abundantly clear that it is irrelevant to whom the informal claim initially was submitted, so long as it is part of the IRS's administrative file.

## CONCLUSION

For the reasons set forth herein, as well as in Plaintiffs' Memorandum in Opposition, the Plaintiffs respectfully request that the Court deny the Defendant's Motion to Dismiss.

/s/ David J. Polashuk
David J. Polashuk, Fed. Bar No. 07728
dpolashuk@lmcplaw.com
Bruce L. Mann, Fed. Bar No. 04649
bmann@lmcplaw.com
Levy, Mann, Caplan, Hermann, Schwartzberg & Polashuk, LLC.
400 Redland Court, Suite 110
Owings Mills, Maryland 21117
T: (410) 998-2000
F: (410) 99802007

Attorneys for the Plaintiffs