## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ERIK OOSTERWIJK and ASPASIA OOSTERWIJK | |
| v. | Civil Action No. CCB-21-1151 |
| UNITED STATES OF AMERICA | |

### MEMORANDUM

Erik and Aspasia Oosterwijk filed their 2017 tax return late and now seek a refund for the IRS's late filing penalties because their accountant failed to e-file for an extension and then gave them incorrect advice on how to obtain an extension and stop the penalties from accruing. The government moved to dismiss (ECF 15, Mot. Dismiss), the Oosterwijks responded (ECF 18, Mem. In Opp'n), the government replied (ECF 25, Reply), and this court granted leave for a surreply from the Oosterwijks (ECF 28, Pls.' Surreply). The issues have been briefed, and the court heard oral argument on December 2, 2021. For the following reasons, the motion to dismiss will be granted.

### BACKGROUND

Erik and Aspasia Oosterwijk owned a small Broadway Market meat stall, which they grew into a thriving Fells Point meat wholesaler over the course of 24 years. In 2017, they sold the business, and the transaction complicated their taxes that year. As was the case for a decade, CPA Ernie Paszkiewicz of the accounting firm Gross, Mendelsohn, and Associates ("Gross Mendelsohn") handled their taxes, including preparing and filing extension requests and income tax returns. Their tax compliance record was clean except for a $7 late payment penalty incurred in 2014; that penalty was waived under the IRS's First Time Penalty Abatement Policy.

1

In the year they sold the business, Mr. Paszkiewicz and the Oosterwijks determined that they would file IRS Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return ("Extension Request"), before filing their 2017 Form 1040. Mr. Paszkiewicz said he would e-file the Extension Request before Tax Day (that year, April 17, 2018), but per the instructions of Form 4868, their balance due of $1.8 million would be automatically debited from their bank account. The Oosterwijks made sure their account had enough funds for the payment.

But Tax Day came and went, and the money remained in their account. The Oosterwijks monitored their account balance in the days that followed, finally emailing Mr. Paszkiewicz on April 25, 2018, to seek his advice. Mr. Paszkiewicz responded that day, advising the plaintiffs to wait until April 30 to see if the Extension Payment had still not been deducted from their account, in which case he would contact the IRS.

Ms. Oosterwijk emailed Mr. Paszkiewicz again on April 29 to inform him that the $1.8 million remained in their account. The next day Mr. Paszkiewicz discovered, and told the Oosterwijks, that he had not actually e-filed the Extension Request as he had told them. He advised them that if they filed the six-month Extension Request at that moment, they would have until October 15, 2018, to file their tax return, and the penalties for late filing would halt. The Oosterwijks immediately mailed a paper Extension Request form and a check for $1.8 million to the IRS. The payment posted to the Oosterwijks' 2017 Form 1040 account on May 4, 2018. About two months later, on June 29, 2018, the Oosterwijks e-filed their 2017 Form 1040; the form was processed September 10, 2018.

The IRS assessed a "Failure to Pay" Penalty under IRC § 6651(a)(2) in the amount of $8,859.19 on October 15, 2018. The payment penalty is calculated by "add[ing] to the amount

2

shown as tax on such return 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate[.]" IRC § 6651(a)(2). The Oosterwijks' payment penalty covered one month — from Tax Day until the May 4 posting of their $1.8 million check.

The IRS also assessed a "Failure to File" penalty under IRC § 6651(a)(1) in the amount of $256,916.36 when the Oosterwijks' Form 1040 processed in September 2018. According to the statute, the filing penalty is calculated by "add[ing] to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate[.]" IRC § 6651(a)(1). The Oosterwijks' "Failure to File" penalty covered three months — from Tax Day until their June 29 e-filing. Based on Mr. Paszkiewicz's advice, they had incorrectly believed that by paying their taxes and submitting the Extension Request on May 4 (during the first month of lateness), they would halt the accrual of any late filing penalties until after October 2018.

Finally, the IRS assessed an additional "Failure to File" penalty in the amount of $8,859.19 on October 15, 2018. Accounting for all three assessments, the Oosterwijks owed a total of $274,634.73 in payments.

Because of their 2014 late penalty, the Oosterwijks did not qualify for the IRS's First Time Abatement program, and the IRS denied their November 2018 request for penalty relief. Mr. Paszkiewicz appealed the denial that same month, and, after a conference with an IRS Appeals Officer, the IRS agreed to abate $132,887.78 of the Failure to File penalty and $4,429.59 of the Failure to Pay penalty.

3

After several phone conversations with the IRS, the Oosterwijks sent a March 22, 2019,

letter to the IRS memorializing one conversation and raising the issue of their reasonable cause

for late filing due to Gross Mendelsohn's failure to e-file the Extension Request and advice about

how to halt the penalties' accrual. In June 2019, the Oosterwijks paid the balance of the penalties

they owed and in July 2019 they filed Form 843, claiming a refund for the penalties sustained

earlier by the IRS because, they said, they had reasonable cause for their late filing. At least six

months having passed since filing their refund claim, the Oosterwijks brought this suit (ECF 1,

Compl.) in May 2021 and amended it in July 2021 (ECF 10, Am. Compl.). The government

moved to dismiss (ECF 15, Mot. Dismiss).

## LEGAL STANDARD

The government has moved to dismiss for failure to state a claim under Fed. R. Civ. P.

12(b)(6). A court considers only the pleadings when deciding a Rule 12(b)(6) motion. Where the

parties present matters outside of the pleadings and the court considers those matters, as here, the

motion is treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Gadsby by Gadsby v.*

*Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*,

241 F. Supp. 2d 551, 556 (D. Md. 2003). "There are two requirements for a proper Rule 12(d)

conversion." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of*

*Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013). First, all parties must "be given some indication by

the court that it is treating the 12(b)(6) motion as a motion for summary judgment," which can be

satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v.*

*Wall*, 761 F.2d 175, 177 (4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.*,

149 F.3d 253, 261 (4th Cir. 1998) (commenting that a court has no obligation "to notify parties

of the obvious"). "[T]he second requirement for proper conversion of a Rule 12(b)(6) motion is

4

that the parties first 'be afforded a reasonable opportunity for discovery.'" *Greater Baltimore*, 721 F.3d at 281.

Both parties had adequate notice that the defendant's motion might be treated as one for summary judgment. Both the plaintiffs and the defendant submitted additional documentary exhibits (*see* ECF 15-2–3, 18-2, 25-1, 28-1–3). If either party had thought that they needed additional evidence to oppose summary judgment, Rule 56(d), which they have not invoked, afforded them the opportunity to seek further discovery through an affidavit. *See* Fed. R. Civ. P. 56(d); *see also Greater Baltimore*, 721 F.3d at 281 ("[The defendant] took 'the proper course' when it filed the Rule 56([d]) Affidavit, 'stating that it could not properly oppose . . . summary judgment without a chance to conduct discovery.'") (citation omitted); *Laughlin*, 149 F.3d at 261 (refusing to overturn district court's grant of summary judgment on assertions of inadequate discovery when the nonmoving party failed to make an appropriate motion under Rule 56([d])). Therefore, the court will consider the affidavits and additional materials submitted by the parties and will treat the motion of the government as a motion for summary judgment.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477

5

U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving

party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable

inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see*

*also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the

same time, the court must "prevent factually unsupported claims and defenses from proceeding

to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting

*Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The government also challenges the factual basis for subject matter jurisdiction, and the

court construes this part of the Rule 12(b)(6) motion as a Rule 12(b)(1) motion. The Fourth

Circuit has summarized the appropriate standard:

> When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject
> matter jurisdiction, the burden of proving subject matter jurisdiction is on the
> plaintiff. In determining whether jurisdiction exists, the district court is to regard
> the pleadings' allegations as mere evidence on the issue, and may consider evidence
> outside the pleadings without converting the proceeding to one for summary
> judgment. The district court should apply the standard applicable to a motion for
> summary judgment, under which the nonmoving party must set forth specific facts
> beyond the pleadings to show that a genuine issue of material fact exists. The
> moving party should prevail only if the material jurisdictional facts are not in
> dispute and the moving party is entitled to prevail as a matter of law.

*Richmond, Fredericksburg and Potomac R.R. Co. v. United States*, 945 F.2d 765, 768

(4th Cir. 1991) (internal citations omitted).

## ANALYSIS

### I.  Jurisdiction based on formal refund claim

The government challenges the court's jurisdiction over the case because, it argues, the

Oosterwijks' formal refund claim did not adequately cover the factual bases and legal arguments

raised in this lawsuit as required by the substantial variance rule. Section 7422(a) of the Internal

Revenue Code provides:

6

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed . . . until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.

26 U.S.C. § 7422. The regulations promulgated under § 7422(a) state, "The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402-2(b)(1). If the refund claim does not meet the requirements of the Code and the regulations, the suit must be dismissed. *L.E. Myers Co. v. United States*, 673 F.2d 1366, 1367 (Ct. Cl. 1982). "Any legal theory not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated." *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000) (quoting *Burlington N. Inc. v. United States*, 684 F.2d 866, 868 (Ct. Cl. 1982)). There are two reasons for these requirements: (1) to prevent surprise and (2) to give the IRS adequate notice of the claim and its underlying facts so that it can make an administrative investigation and determination regarding the claim. *Burlington N. Inc.*, 684 F.2d at 868.

The Oosterwijks' predicament is that their formal refund claim — Form 843, filed in July 2019 — does not identify reliance on inaccurate substantive advice as their theory of reasonable cause, although they had articulated this theory to IRS Appeals months earlier over the phone and in their March 2019 letter. Instead, their Form 843 directly refers only to reasonable cause due to Gross Mendelsohn's failure to e-file. If the March 2019 letter were an informal appeal later perfected by Form 843, there would be no question that the IRS had notice of both the Oosterwijks' proposed sources of reasonable cause. But then their lawsuit (filed in May 2021) would be untimely, filed beyond the two-year statute of limitations. The Oosterwijks thus argue

7

that the March 2019 letter was not its own informal appeal but rather that it was incorporated into their Form 843 refund claim.

It is a close question, but the court finds that the language in the Oosterwijks' Form 843 (ECF 26-2) was sufficient both to put the IRS on notice that the Oosterwijks alleged IRC § 6651(a) reasonable cause for their failure to file and to allow the IRS to focus its investigation, which should have led to the March 2019 memorandum. A refund claim need not provide a perfectly detailed explanation of the taxpayer's legal theory regarding reasonable cause or develop a complete factual background of the claim if it clearly states that the taxpayer seeks a refund for an improperly imposed penalty, calling for investigation into whether there truly existed reasonable cause for a late filing. *See New Gaming Systems, Inc. v. United States*, 112 A.F.T.R. 2d 2013-6664, 2013 WL 5798998 at *10–11 (E.D. Cal. 2013). "[The Oosterwijks] put the IRS on notice that willful neglect and reasonable cause were issues to be considered . . . . Thus, a reasonable IRS employee reading [the Oosterwijks'] claim would understand these issues were at play." *Id.* at *11; *cf. Boyd v. United States*, 762 F.2d 1369, 1371 (9th Cir. 1985) (where taxpayer's formal claim sought a deduction for professional gambling losses but did not sufficiently apprise the IRS that he would claim deductions for tips and house take-offs). The court therefore will assume that the substantial variance doctrine does not bar it from ruling on the Oosterwijks' claim that their failure to timely file was due to reasonable cause.

## II. Reasonable cause due to counsel's failure to e-file

The bulk of the penalties arose due to the Oosterwijks' late filing of their 2017 Form 1040, which was due in April 2018 but not filed until June 29, 2018. The Oosterwijks argue that these penalties should be excused because they had reasonable cause for filing late, specifically that their accountant failed to e-file their extension request and their personal e-filing access was limited. The relevant statute reads in pertinent part:

8

"In case of failure . . . to file any return . . . on the date prescribed therefor . . ., *unless it is shown that such failure is due to reasonable cause and not due to willful neglect*, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate . . . ."

IRC § 6651(a)(1) (emphasis added). "Congress' purpose in the prescribed civil penalty was to ensure timely filing of tax returns to the end that tax liability will be ascertained and paid promptly. . . . To escape the penalty, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect' and (2) that the failure was 'due to reasonable cause.'" *United States v. Boyle*, 469 U.S. 241, 245 (1985). A relevant Treasury Regulation[1] provides that, to demonstrate "reasonable cause," a taxpayer filing a late return must show that she or he "exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time." 26 CFR § 301.6651–1(c)(1) (1984).[2] The Supreme Court has interpreted the "willful neglect" standard of I.R.C. § 6651(a)(1) to mean "a conscious, intentional failure or reckless indifference." *Boyle* at 245; *Baer v. United States*, 150 Fed. Cl. 761, 764 (Fed. Cl. 2020).

In *Boyle*, the Supreme Court's leading case on the reasonable cause exception, the taxpayer was executor of his mother's estate, and he relied on an attorney for instruction and

---

[1] "Where an agency is tasked with administering a statute, as the IRS is tasked with administering the Internal Revenue Code, the agency's interpretation of ambiguous language in that statute is entitled to deference provided it is based on a reasonable construction of the statute. *See Regis v. Holder*, 769 F.3d 878, 881 (4th Cir. 2014) (*citing Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). The parties offer no reason to doubt that the IRS's interpretation of § 6651(a), as reflected in the regulation, is entitled to deference." *West v. Koskinen*, 141 F. Supp. 3d 498, 501 n.6 (E.D. Va. 2015).

[2] The IRS articulated eight reasons for a late filing that it considers to constitute "reasonable cause." These reasons include unavoidable postal delays, the taxpayer's timely filing of a return with the wrong IRS office, the taxpayer's reliance on the erroneous advice of an IRS officer or employee, the death or serious illness of the taxpayer or a member of his immediate family, the taxpayer's unavoidable absence, destruction by casualty of the taxpayer's records or place of business, failure of the IRS to furnish the taxpayer with the necessary forms in a timely fashion, and the inability of an IRS representative to meet with the taxpayer when the taxpayer makes a timely visit to an IRS office in an attempt to secure information or aid in the preparation of a return. *Boyle*, 469 U.S. at 243, n.1 (citing Internal Revenue Manual (CCH) § 4350, (24) ¶ 22.2(2) (Mar. 20, 1980)).

guidance in handling the federal estate tax return before its filing deadline of nine months after his mother's death. *Boyle* at 242. Even though the executor checked in with the attorney several times over the spring and summer before the return was due in June 1979, the attorney forgot to calendar the deadline and failed to file the return until September 1979. *Id.* at 242–43. The IRS assessed § 6651(a)(1) Failure to File penalties, but the executor argued that his reliance on the attorney's assurances constituted "reasonable cause" for missing the deadline as contemplated by the statute. *Id.* at 243–44.

The Supreme Court drew "as 'bright' a line as can be drawn consistent with the statute and implementing regulations" and held that Congress had "charged the [taxpayer-executor] with an unambiguous, precisely defined duty to file the return [by the deadline]; extensions are granted fairly routinely. That the attorney, as the [taxpayer-executor's] agent, was expected to attend to the matter does not relieve the principal of his duty to comply with the statute." *Id.* at 248, 249, 250. The fixed and clear burden of prompt filing fell on the taxpayer-executor, not on his agent or employee, even if engaging a tax professional was ordinary business care and prudence. *Id.* at 249–50. Failing to meet the deadline was not a matter of erroneous advice[3] of counsel concerning a question of law because "one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due." *Id.* at 250–51. "[R]eliance cannot function as a substitute for compliance with an unambiguous statute." *Id.* at 251.

The *Boyle* court left open the question of whether there is reasonable cause when the taxpayer files or pays after the actual due date but within the time that counsel erroneously said

---

[3] The *Boyle* court explained that reliance on a tax professional's substantive advice on a question of law, e.g., that it was unnecessary to file a return, could constitute reasonable cause. *Boyle*, 469 U.S. at 250.

they had. *Id.* at 251 n.9. "Courts are split on the answer to this question, with some courts holding that the logic of *Boyle* creates an independent duty for the taxpayer to ascertain and to comply with unambiguous deadlines while other courts limit *Boyle* to its facts, holding that although reliance on an expert for ministerial tasks is insufficient to show 'reasonable cause,' reliance on an expert to determine a deadline is sufficient." *West v. Koskinen*, 141 F. Supp. 3d 498, 502 n.8 (E.D. Va. 2015) (collecting cases). The Fourth Circuit has not weighed in on the question.

Justice Brennan in *Boyle* concurred that "a taxpayer cannot avoid the reach of § 6651(a)(1) merely by delegating this duty to an attorney, accountant, or other individual" but stressed that the "ordinary business care and prudence" standard applies only to the "ordinary person." That is, the standard exempts individuals with disabilities or infirmities that render them physically or mentally incapable of knowing, remembering, and complying with a filing deadline. *Id.* at 253 (Brennan, J., concurring).

The Oosterwijks argue that *Boyle* does not apply to electronic filing, because a taxpayer cannot personally confirm that an accountant has e-filed as promised. They say e-filing interposes a third party between the taxpayer and the IRS, and the Oosterwijks' inability either to e-file on their own or to confirm the e-filing's transmission put the filing beyond their control according to Justice Brennan's concurrence. Though they might have filed their Extension Request on paper, the IRS clearly prefers and promotes e-filing.

Though the question of *Boyle*'s applicability to e-filing has not been squarely addressed in federal appellate courts, this court agrees with the government that *Boyle* controls here, and the Oosterwijks may not find reasonable cause in their reliance on Gross Mendelsohn to e-file

11

the extension request. *See Intress v. United States*, 404 F. Supp. 3d 1174, 1178–81 (M.D. Tenn. 2019).

First, the Oosterwijks were free to file their own extension request on paper — and, indeed, they did so on April 30, 2018, after Tax Day. (ECF 10 ¶ 25). The specialized technology and professionals-only availability of e-filing need not have been a barrier to the filing of an Extension Request; the same means available to the *Boyle* taxpayer in 1979 were available to the Oosterwijks in 2017, even if the IRS encourages e-filing.

Second, the *Boyle* concurrence's limits on the bright-line rule of non-delegability do not apply. The Oosterwijks say that e-filing's limitation to professional preparers and their inability to confirm electronic transmission put the filing out of their control. But Justice Brennan's concurrence contemplates differently abled taxpayers who are physically or mentally incapable of meeting a filing deadline. The Oosterwijks do not fall under this exception.

Though this might change in a world of mandatory e-filing, *see Intress*, 404 F. Supp. 3d at 1180–81, the Oosterwijks had (and used) the option of paper filing, and their limited personal access to e-filing is not what the *Boyle* concurrence has in mind. They did not have reasonable cause for filing their Extension Request late after relying on Mr. Paszkiewicz to file it for them.

### III. Reasonable cause based on bad substantive advice as to the penalties' accrual.

The Oosterwijks next seek relief for the accrual of their penalties after the first month. In April 2018 after Tax Day (when the return and payment were already late), Mr. Paszkiewicz advised the Oosterwijks that filing an Extension Request and paying their estimated $1.8 million in taxes would halt the accrual of further penalties until the post-extension Tax Return due date of October 15, 2018. But this advice was incorrect; in fact, the Extension Request did not halt their penalty accrual, because the Extension Request must be filed before the return's original deadline, according to the form's instructions. The Oosterwijks say that, but for Mr.

Paszkiewicz's bad advice, they would have immediately filed a tax return in April 2018 instead of waiting until June 2018 — even if that tax return was incomplete and required later amendment — to halt the accrual. As a result, they claim reasonable cause for their late filings past the first month, in May and June 2018.

To the Oosterwijks, the core issue is whether § 6651 reasonable cause arose as to parts of the penalty incurred in later months when, after the deadline had already passed, they relied on their tax professional's bad substantive advice about what actions would stop the accrual of a tax penalty. They say that this would leave intact the April 2018 penalty but would require removal of the penalties for May and June 2018, the months after Mr. Paszkiewicz's incorrect April 30 advice.[4] The Oosterwijks focus on the distinction between relying on a tax professional to perform the ministerial (and non-delegable, under *Boyle*) duty of filing an extension return, as compared to the tax professional's erroneous substantive advice about what actions would halt the penalty's accrual.

The government offers two main arguments in response. First, the government argues that the late filing penalty is indivisible and that there is no reasonable cause exception for the accrual of a late filing penalty once it has been applied. The penalty is assessed based on the state of affairs at the single moment of the filing deadline, and therefore there is no month-by-month evaluation of reasonable cause for the filing's lateness in a particular month. In other words, if the reasonable cause exception does not apply on the deadline, its hypothetical applicability at

---

[4] "When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney . . . on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place." *Boyle*, 469 U.S. at 251. This court assumes that Gross Mendelsohn's advice about how to halt penalty accrual was substantive legal advice rather than ministerial deadline compliance.

some future date is irrelevant, because the one penalty applied on the deadline continues to accrue regardless.

Second, the government argues that even if there were monthly re-evaluation of the reasonable cause exception, it does not apply here, because Mr. Paszkiewicz's advice contradicted the Extension Request's instructions that a taxpayer must "[f]ile Form 4868 by the regular due date of your return." Such advice would not have been based on a "reasonable factual or legal assumption," and the Oosterwijks would have acted unreasonably in relying on it, barring them from claiming reasonable cause. *See Baer*, 150 Fed. Cl. at 769 (citing *Stobie Creek Investments LLC v. United States*, 608 F.3d 1366, 1381 (Fed. Cir. 2010)). The court addresses each argument in turn, finding for the government.

### A.   Divisibility

Reasonable cause must exist on the date prescribed for payment in order for the exception to apply. *See Est. of Hartsell v. Comm'r*, T.C. Memo, 2004-211 at *3 (2004) (considering the statute, the relevant regulations[5], and Congress's purpose of encouraging timely tax filing and payment to reach this conclusion; citing *Indus. Indem. v. Snyder*, 41 B.R. 882, 883–84 (E.D. Wash. 1984) (holding that if a taxpayer did not have "reasonable cause" on the date his taxes were due, later justifications would not stop penalties from accruing)).[6] This due date need not be the original due date (e.g., Tax Day); if a taxpayer timely files an extension request that pushes back the deadline for filing or paying, courts can still find reasonable cause based on events

---

[5] "In case of failure to file a return . . . there shall be added [five percent per month] unless the failure to file the return *within the prescribed time* is shown . . . to be due to reasonable cause and not to willful neglect." 26 C.F.R. § 301.6651-1(a)(1) (emphasis added).

[6] *C.f. Est. of Sowell v. United States*, 198 F.3d 169, 172 n.4 (5th Cir. 1999) (distinguishing *Industrial Indemnity* by holding that although later justifications do not trigger post-deadline "reasonable cause" for a late filing, evidence post-dating the deadline is not necessarily irrelevant to the question of whether "reasonable cause" existed at the deadline).

occurring before that extended deadline. *See Estate of Kwang Lee v. Comm'r*, T.C. Memo 2009-84 (Tax Ct. 2009); *Estate of La Meres v. Comm'r*, 98 T.C. 294 (Tax Ct. 1992). A finding of reasonable cause at the due date does not guarantee that all subsequent months of delinquency will be covered by the reasonable cause exception, and courts have found that the exception may cease to apply at some point in the delinquency when the supporting reason is no longer present. *See Estate of Liftin v. United States*, 111 Fed. Cl. 13, 23 (Fed. Cl. 2013), aff'd 754 F.3d 975 (Fed. Cir. 2014).

Gross Mendelsohn advised the Oosterwijks after the filing deadline had already passed and after they had already failed to establish reasonable cause for filing late. The government argues that because reasonable cause is a one-time test evaluated at the due date, the penalties are indivisible and the Oosterwijks would not be entitled to subsequent re-evaluations even if it were possible for them to reasonably rely on erroneous legal advice that came at some later date.

The Oosterwijks disagree, arguing that it is not "all or nothing" but rather 5% per month, capped at 25%. They cite several cases[7] purporting to demonstrate that, "contrary to [the government's argument], late filing penalties can be abated based on reliance on a taxpayer's attorney's advice given after the date when a taxpayer's tax return initially was due." (ECF 18 at

---

[7] *Estate of Kwang Lee v. Comm'r*, T.C. Memo 2009-84 (Tax Ct. 2009) (finding reasonable cause for a diligent taxpayer's late filing where attorney erroneously advised the taxpayer that a second extension was available; attorney gave this advice while still within the deadline as extended from the first extension); *Estate of La Meres v. Comm'r*, 98 T.C. 294, 314–15 (Tax Ct. 1992) (same; taxpayer reasonably relied on attorney's pre-deadline advice (not mere nondelegable filing) about the availability of a second extension in the context of an extension request form whose instructions would have been inconclusive to the taxpayer); *Hopping v. U.S.*, A.F.T.R. 2d 92-1464, 1992 WL 474101 at *14 (S.D. Ind. 1992) (finding no reasonable cause due to a long period of failing to file even after receiving notice that the timely requested but unavailable second extension request had been denied; the court said the taxpayer may have had reasonable cause covering the period between counsel's wrong advice about a second extension and notice of the extension's denial, but it was irrelevant because the period of unreasonable reliance between the denial and filing incurred the statute's maximum penalty); *Estate of Liftin v. U.S.*, 111 Fed. Cl. 13, 23 (Fed. Cl. 2013), aff'd 754 F.3d 975 (Fed. Cir. 2014) (holding that reasonable cause existed on the prescribed due date but did not exist for the final nine months of delinquency, leading to the statutory maximum penalty and a denial of the taxpayer's refund action).

22). But §§ 6651(a)(1) and (2) both specify that they concern the failure to file or pay "on the date prescribed therefor *(determined with regard to any extension or time for filing)*" when determining the applicability of penalties. 26 U.S.C. § 6651(a)(1), (2) (emphasis added). Three of the plaintiffs' cases (*Lee*, *La Meres*, and *Hopping*) (ECF 18 at 17–22) concern bad legal advice about the availability of second extensions after the taxpayer had already timely filed and obtained a first extension. In *La Meres*, for example, the Tax Court noted that on the instructions for the extension application form, there was no explicit statement that a second extension could not be granted or that the aggregate extensions could not exceed six months. *La Meres*, 98 T.C. at 321. This information was available only toward the end of the relevant estate tax regulation, and it would have been "unreasonable to hold that a taxpayer could not rely on the advice of an attorney with respect to the availability of multiple filing extensions." *Id.* The *La Meres* court found reasonable reliance on the attorney's advice where the relevant form's instructions were vague and left open the apparent possibility of the attorney's advice being valid. The court did not find reasonable reliance where the instructions plainly contradicted the attorney's advice. Importantly, the erroneous advice took place within the first extended deadline, as was true in *Lee* and *Hopping*, as well.

These second-extension cases are distinct from the Oosterwijks'. The taxpayers in these cases were erroneously advised by their attorneys before their (first extended) deadlines had passed, meaning they could still have had reasonable cause under § 6651. The fact that they received erroneous advice after their *original* deadlines is immaterial, because their reasonable cause evaluation was governed by their first extended deadline. In contrast, the Oosterwijks received their erroneous advice after the deadline had passed and therefore after the door had closed on reasonable cause for late filing.

16

The Oosterwijks also cite *Liftin* as support for the proposition that the penalty is divisible and thus reasonable cause should be granted for the second and third months of their delinquency. There, the trial court did divide the period of delinquency and find part of it to have been covered by the reasonable cause exception. 111 Fed. Cl. at 23. The *Liftin* taxpayer began with reasonable cause at the date of filing based on erroneous advice about waiting to file until after the taxpayer's spouse had become a naturalized citizen. *Id.* But the taxpayer-Estate then lost reasonable cause when circumstances changed two months later, after the spouse became a citizen but the taxpayer still did not file for another nine months. Counsel advised the taxpayer-Estate that it could delay filing until all ancillary matters were completed, advice he gave based on his belief that the taxpayer should wait to file until it had sufficient information to file an "accurate" return, though counsel did not explain how he came to this conclusion. *Id.* at 22, 22 n.9. But the need to file an accurate return cannot constitute reasonable cause for late filing. *Id.* at 22 n.9.[8] The trial court found that the attorney's advice that the taxpayer-Estate could delay filing until it could submit an accurate return was not an interpretation of substantive tax law, and therefore that advice could not legally constitute reasonable cause for the delay in filing the tax return. *Liftin*, 111 Fed. Cl. at 23 (citing cases). Ultimately, the trial court found reasonable cause for the first two months of delinquency and no reasonable cause for the final nine months of delinquency; because the nine-month delinquency was greater than the statutory maximum, the court denied the taxpayer's refund action. On appeal, the Federal Circuit declined to address those first two months, ending the inquiry at the final nine months' lack of reasonable cause. *Estate of Liftin v. United States*, 754 F.3d 975, 979 (Fed. Cir. 2014).

---

[8] The *Liftin* court cited *Randall v. Comm'r*: "Under petitioner's position, as long as a taxpayer did not have all of the information that was needed to prepare a complete, and therefore accurate, return, he or she will never have to file a return and yet will not be liable for the addition to tax under [§] 6651(a)(1). We disagree." 74 T.C.M. (CCH) 258 at *3 n.5 (1997).

*Liftin* shows that although the penalty is not entirely indivisible for the purposes of the reasonable cause exception, it is not divisible in the way the Oosterwijks hope. They, unlike the *Liftin* taxpayer, failed to meet the initial requirements of reasonable cause. The purpose of encouraging timely filing is best served by reading the statute to allow reasonable cause to expire based on a change in circumstances at some point in the delinquency but not allowing it to materialize where the taxpayer had none at the time of filing.

### B. Reasonableness of reliance on something contradicting form

Because no reasonable cause existed to excuse the April 2018 late filing penalty (*see* § II, *supra*) and the exception cannot be subsequently applied to the May and June 2018 penalties (*see* § III.A, *supra*), this court need not reach the question of whether the Oosterwijks reasonably relied on Gross Mendelsohn's advice about how to halt the late filing penalty's accrual. But even assuming otherwise, the Oosterwijks' would have been unreasonable to rely on Gross Mendelsohn's substantive legal advice that filing a late Extension Request would halt the accrual of the late filing penalties for May and June 2018.

To substantiate a reasonable cause exception for late filing, tax advice must be reasonable. Courts interpret reasonable cause to exclude "advice that depends on legal assumptions that are outside the range of the reasonable." *Liftin*, 754 F.3d at 979–80. "Even if all factual assumptions are correct, the regulation bars a defense of reliance on professional advice if the advice depends on legal assumptions that are simply unreasonable." *Id.*; *see also Stobie Creek Invs. LLC v. United States*, 608 F.3d 1366, 1381 (Fed. Cir. 2010).

*Baer v. United States* is instructive as to the reasonableness of tax advice. 150 Fed. Cl. 761 (Fed. Cl. 2020). There, the taxpayer's CPA did not file an Extension Request, because he wrongly believed the request needed to be submitted with an estimated payment from the

taxpayer. The trial court rejected the taxpayer's argument that he had reasonably relied on the CPA's action (or failure to act) as tax advice; the court decided that this was not advice at all. But, more relevantly to the instant case, the court then noted that even if the CPA's action had been advice, the taxpayer could not have reasonably relied on it because it would not have been based on a "reasonable factual or legal assumption." *Baer*, 150 Fed. Cl. at 769. The court wrote that the CPA would have been aware that his advice was wrong based on the explicit text of the form, providing clear notice of the fact that no estimated payment was required in order to file the Extension Request. "The provision on the face of the form of [a directly relevant] explicit instruction . . . renders any belief to the contrary unreasonable." *Id.* at 770. Even accepting (as the court did at the 12(b)(6) stage) the taxpayer's allegation that the CPA had given erroneous advice based on an incorrect assumption, that assumption was unreasonable, and the taxpayer's reliance could not substantiate reasonable cause. *Id.* at 770–71.

The Oosterwijks point to *La Meres* — in which counsel erroneously advised the taxpayer that a second six-month extension was available — as their prime example contradicting *Baer*. The *La Meres* court described how the relevant form and statute did not explicitly state that the IRS may grant only one extension or that all extensions in total may not exceed six months. *La Meres*, 98 T.C. at 321. This rule was made explicit only at the very end of the relevant treasury regulation, and it would have been unreasonable to expect the taxpayer to challenge advice on the matter. *Id.* Creating additional confusion, the IRS's actions in response to the second (invalid) extension application were identical to its actions in response to the first (valid) extension application, at least from the perspective of the taxpayer. *Id.* at 322. Finally, the court noted that the IRS's own agents appeared not to know that the second extension request was

invalid, and it counted this fact against the government. *Id.* The court found reasonable cause for a late filing.

The Oosterwijks' case is more similar to *Baer* than to *La Meres*. First, the Extension Request form's text is as explicit as the form in *Baer*. As to the late filing penalties, Form 4868 states a taxpayer must "[f]ile Form 4868 by the regular due date of your return" to receive the automatic extension. Gross Mendelsohn's advice directly to the contrary was unreasonable. Second, the Oosterwijks had no prior interaction with the IRS that might have misled them into believing they were complying with the law, whereas the *La Meres* taxpayer believed their second extension had been approved just like their first. Finally, this case's key contradiction of counsel's advice came on the face of the Extension Request form rather than buried in Treasury regulations, reducing the expectation of total deference to counsel. While there appears to be evidence of confusion within the IRS (a fact that this court, like the *La Meres* court, construes in the Oosterwijks' favor), this is not enough to make Gross Mendelsohn's legal assumptions reasonable or to make plausible a claim of reasonable reliance on erroneous advice and, therefore, reasonable cause for late filing.

Despite the Oosterwijks' personal conscientiousness, their reliance on Gross Mendelsohn's advice was unreasonable, because that advice directly contradicted the text of the Extension Request form. Therefore, even if the penalties for May and June of 2018 were eligible for a separate reasonable cause inquiry despite the Oosterwijks' failure to establish reasonable cause in April 2018, this court would not find reasonable cause for their late filing.

## CONCLUSION

To be clear, the court is sympathetic to the Oosterwijks, who were not willfully neglectful but rather appear to have relied on the advice of a trusted professional, intending to fulfill their

20

obligations under the tax laws. But neither was the government at fault, and indeed the IRS did

abate a substantial portion of the penalties assessed. For the reasons discussed herein, the court

concludes that no refund can be required; the government's motion to dismiss (construed as a

motion for summary judgment) will be granted. A separate Order follows.


1/27/22
_____
Date


_____
Catherine C. Blake
United States District Judge